Agnes, Peter W., J.
INTRODUCTION
The Plaintiff, Jeremy Arsenault (“Arsenault”), brought a medical malpractice claim against Peter McConarty, M.D. (“Dr. McConarty”) arising out of injuries suffered when Israel Ortiz (“Ortiz”), Dr. McConarty’s patient, lost control of the automobile he was driving and struck Arsenault while Arsenault was riding his motorcycle. Arsenault claims Dr. McConarty was negligent in Ortiz’s care and, as a result, was the direct and proximate cause of the accident. Dr. McConarty maintains that notwithstanding any alleged negligence, no duty was owed to Arsenault. This matter is now before the court on Dr. McConarty’s Motion for Summaiy Judgment and Arsenault’s Cross Motion for Summaiy Judgment. For the reasons set forth below, both motions are DENIED.
BACKGROUND
Based on the material in the Rule 56 record before the court, a juiy could find the following facts. Dr. McConarty began treating Ortiz for diabetes in December of 1999. Ortiz had a histoiy of poorly controlled type II diabetes and suffered from persistent hypoglycemia and hyperglycemia. On May 5, 2001, Ortiz had trouble breathing and checked himself into Health Alliance Hospital in Leominster, MA, where Dr. McConarty could treat him.
Each morning while at the hospital, Ortiz’s blood sugar registered belownormal. On the morning of May 6, Ortiz’s blood sugar responded properly to breakfast food. However, on May 7, the date Ortiz was discharged from the hospital, his blood sugar registered 68 mg/dl, while his post-breakfast blood sugar only measured 78 mg/dl, still below normal and inconsistent with the rise in Ortiz’s blood sugar level after breakfast the previous morning. Despite the low blood sugar level, Dr. McConarty prescribed all of Ortiz’s diabetes medications that were designed to have the overall effect of lowering Ortiz’s blood sugar level.
It could be found that Dr. McConarty then discharged Ortiz without providing him with any warning of the potential risks involved -with the administration of antiglycemic medications at a time when blood sugar levels were low. Approximately 45 minutes after Ortiz was discharged from the hospital, he lost consciousness as a result of low blood sugar, losing both mental and physical control of his body and the vehicle he was operating. Ortiz’s vehicle crossed the center traffic line and collided with Arsenault’s motorcycle, causing severe injuries to Arsenault. Ortiz’s blood sugar level after the accident was at a dangerously low level of 26 mg/dl.
DISCUSSION
I. Standard of Review
Summaiy judgment may be granted only when there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. *501 Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). All the evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
II. Principles of Negligence Law Applicable to This Case
A.General Principles
Under Massachusetts law, in order to prove negligence, Arsenault must show that (1) Dr. McConarty owed him a duty, (2) Dr. McConarty breached that duty or was negligent, (3) Arsenault suffered damages as a result of Dr. McConarty’s breach, and (4) Dr. McConarty’s breach was the proximate cause of Arsenault’s injuries. Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633, 638 (2002). Thus, Dr. McConarty was not negligent toward the plaintiff unless he owed the plaintiff a duty to be careful. Theriault v. Pierce, 307 Mass. 532, 533 (1940). See Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989) (“There can be negligence only where there is a duty to be careful”). This is a question of law. Schofield v. Merrill, 386 Mass. 244, 248-49 (1982).
B.Whether Dr. McConarty Owed the Plaintiff a Duty of Care
Dr. McConarty claims that because the undisputed facts demonstrate he had no physician-patient relationship with Arsenault, he did not owe Arsenault a duty of care and thus he is entitled to summary judgment. The plaintiff, on the other hand, maintains that the defendant did owe him a duty of care based on the trend of the decisional law in Massachusetts, which is replacing artificial barriers to recovery in tort law with a principle that persons have a duty to refrain from affirmative acts that expose others to unreasonable and foreseeable risks of harm. See Plaintiffs Memorandum of Law at 5-8 (May 2006). Additionally, the plaintiff maintains that summary judgment should be granted in his favor because not only did the defendant owe him a duty of care, but on the undisputed facts the question of the defendant’s negligence is established as a matter of law.
Massachusetts has not adopted the principle of section 321 of the Restatement (Second) of Torts under which an actor is liable to another simply as a result of doing an act that he or she “realizes or should realize” creates “an unreasonable risk of causing physical harm” to another. Panagakos v. Walsh, 434 Mass. 353, 356 (2001). Thus, the forseeability of physical harm is not the linchpin for determining the existence of a common-law duty under Massachusetts tort law. Instead, the question of duty is determined by a consideration of “existing social values, customs, and considerations of policy.” Luoni v. Berube, 431 Mass. 729, 730 (2000), quoting Cremins v. Clancy, 415 Mass. 289, 292 (1993), and cases cited.
Generally, a duty to protect a third party with whom the actor has no direct dealing but who is injured as a result of the negligence of the actor in relation to someone to whom the actor does owe a duty of care will turn on whether social values, customs and public policy led the Supreme Judicial Court to find that a special relationship exists between the actor and the injured third party. See Irwin v. Town of Ware, 392 Mass. 745, 762 (1984) (“We conclude that there is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure”). There is no simple formula that can generate the answer to whether a duty of care is owed in cases such as this where a third party who had no direct contact with a physician is injured as a result of the negligence of the physician’s patient. See Luoni, supra, 431 Mass. at 735, quoting W.L. Prosser & W.P. Keeton, Torts §53, at 358-59 (5th ed. 1984) (‘The concept of ‘duty,’ ” according to an authoritative treatise on tort law, “is not sacrosanct in itself, but is only an expression of the sum total of. .. considerations of policy which lead the law to say that the plaintiff is entitled to protection ... No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists”).
C.Determining the Existence of a “Special Relationship”
There is no appellate court precedent in Massachusetts that addresses the precise question raised by the defendant’s motion. However, this court recently dealt with the issue in Medina v. Pillemer, 20 Mass. L. Rptr. 352; 2005 Mass. Super. LEXIS 639 (Suffolk Super. Ct.) (Gants, J.). In Medina, Richard Medina stepped out of his parked vehicle and was struck by a vehicle driven by Robert Riskind. Medina originally sued the executor of Riskind’s estate but later learned Riskind suffered a seizure approximately a year earlier and had been suffering from a malignant brain tumor at the time of the accident. Subsequent to discovering Riskind’s medical disposition, Medina moved to add Dr. Fred Hochberg, Riskind’s treating neurologist, as a defendant. Id.
In the proposed amended complaint, Medina alleged that Dr. Hochberg “failed to order, advise, caution, warn, and instruct his patient to not operate a motor vehicle due to the foreseeable risk of injury to *502 innocent bystanders such as the plaintiff, who maybe on the public way in the vicinity where the patient Robert Riskind was operating his motor vehicle.” Id. Dr. Hochberg argued that he owed a duty only to his patient, Robert Riskind, and not to the plaintiff, a third party. The court rejected Dr. Hochberg’s position and allowed Medina’s motion. Id.
In Medina, the court reviewed the case law regarding the doctrine of “special relationship” and identified four situations in which it may be said that there is a duty to protect a potential victim from harm committed by a third person, three of which are applicable here. First, when an individual commits an affirmative act that creates or increases the risk that the third person will harm a potential class of victims, the individual owes a duty to the potential victim class to act reasonably in performing that affirmative act. See Adamian v. Three Sons, Inc., 353 Mass. 498 (1968) (where a restaurant owner served alcoholic beverages to a customer, and negligently continued to serve him and to cause him to become greatly intoxicated in violation of its duty to members of the general public). Next, when there is a special relationship between the defendant and an identifiable limited class of persons that includes the plaintiff, the defendant may owe a duty to the plaintiff to protect him from the dangerous or unlawful acts of a third person. Luoni v. Berube, 431 Mass. 729, 731 (2000). Finally, when there is a special relationship between the defendant and the third person who commits the harmful conduct, Massachusetts law imposes a duty on the defendant to control the third person’s conduct or to provide reasonable warning of the third person’s conduct to a foreseeable class of victims. See Carr v. Howard, 5 Mass. L. Rptr. 63; 1996 Mass. Super. LEXIS 602 (Norfolk Super.Ct. 1996) (Cowin, J.); Restatement (Second) of Torts, §315(a) (duty to control the conduct of a third person to prevent physical harm to another when a “special relation exists between the actor and the third person”).
Whether the Supreme Judicial Court will find the existence of a duty based on the doctrine of a special relationship also will depend on a consideration of other factors. For example, even in the case of an affirmative act that may lead to a foreseeable risk of physical harm, the Supreme Judicial Court has not recognized a special relationship that imposes on the defendant a duty of care that may be asking too much of the potential defendant to act to prevent the harm. See, e.g., social host liability, as discussed in Panagakos v. Walsh, 434 Mass. 353, 356 (2001), and cases cited. Also, as Judge Gants explained in the Medina case, the Supreme Judicial Court also has declined to impose a duty on the basis of a special relationship when it would lead to a conflict between the duty of reasonable care and an already existing fiduciary duty. “For instance, an attorney has no duty to take reasonable care to protect the interests of non-clients where an attorney is also under an independent and potentially conflicting duty to a client.” Medina, supra, quoting Spinner v. Nutt, 417 Mass. 549, 553 (1994), quoting Page v. Frazier, 388 Mass. 55, 63 (1983) and Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989).
The present case presents an even stronger basis for finding a special relationship than Medina, where Dr. Hochberg did not affirmatively prescribe medication to his patient and the court still found a duty owed to the plaintiff. Here, it is alleged that Dr. McConarty affirmatively prescribed Ortiz with diabetes medications that were designed to lower Ortiz’s blood sugar, despite Ortiz’s already low blood sugar level. It is further alleged that Dr. McConarty then discharged Ortiz absent any type of warning regarding Ortiz’s operation of a vehicle. Arsenault relies on expert witness opinion evidence that Dr. McConarty’s treatment deviated from the appropriate standard of care, increasing the likelihood that Ortiz would lose consciousness while driving home from the hospital and injuring another motorist. This court believes that a jury could find that Dr. McConarty’s failure to warn his patient about the risks of taking his diabetes medication on the day in question was the proximate cause of the accident. Arsenault has obtained a medical expert, Dr. Steinmann, who will testify that Dr. McConarty was negligent in failing to warn Ortiz not to drive. In addition, nothing in the record suggests Ortiz had any prior history of blackouts or knew that he risked blacking out, especially after Dr. McConarty considered him well enough to be discharged from the hospital.
Like Medina, where Dr. Hochberg’s primary duly was to Riskind, Dr. McConarty’s primary duty was to Ortiz. Dr. McConarty asserts that extending a duty to Arsenault would open the door to a new category of medical malpractice claims against physicians, which could be “limitless.” See Memorandum in Support of Dr. McConarty’s Motion For Summary Judgment. Extending a duty to Arsenault would not open the door to a new “limitless” category of claims against physicians.' However, the duty Arsenault claims he was owed could have been fulfilled simply by Dr. McConarty warning Ortiz not to drive — advice which a doctor in the exercise of reasonable care to his patient should provide. This court fully appreciates that doctors cannot be insurers of highway safety, and that there is no basis in our existing social values, customs, and considerations of public policy to impose such an unreasonable burden on physicians. Rather, in a case like this, as long as a physician provides his patient with an appropriate warning in accordance with the applicable standard of care, the doctor’s duty to the public, including any injured third party such as the plaintiff in this case, would be discharged. See Luoni v. Berube, 431 Mass. 729, 733-34 (2000) (citations omitted) (a person has no legal duty “to prevent the *503 harmful consequences of a condition or situation he or she did not create”).
This court takes judicial notice of the fact that physicians and other health care professionals with authority to prescribe controlled substances or medications that require a prescription regularly give the patient warnings about the side effects of the medication, the risks of consuming the medicine along with other substances such as alcohol, and the consequences, if any, of not taking the medicine as prescribed, Le., taking too little, taking too much, not completing the prescribed course of the medication, etc., at the time the prescription is issued. Indeed, there is authority for the view that giving warnings to patients about the potential effects of prescribed medication or the potential hazards of taking the medication under certain conditions is an essential element of the applicable standard of care. See Cottam v. CVS Pharmacy, 436 Mass. 316, 321 (2002); MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131, 145 (1985). Therefore, extending a duty to third parties in these situations will not materially alter sound medical practice as it currently exists.
Moreover, here, unlike in other circumstances, there is no risk of conflict between Dr. McConarty’s duty to Ortiz and his duty to foreseeable victims such as Arsenault because the risk of danger each faces is identical: namely, death or serious bodily injury due to a motor vehicle accident.
In addition, numerous appellate courts in other jurisdictions have considered this issue, concluding that a doctor is liable for injuries to a third person arising out of the negligent care of the doctor’s patient. See, e.g., Cram v. Howell, 680 N.E.2d 1096 (Indiana 1997) (where the Indiana Supreme Court ruled that a physician owed a duty to take reasonable precautions in monitoring, releasing, and warning a patient for the protection of unknown persons potentially jeopardized by the patient’s driving after leaving the physician’s office); Myers v. Quesenberry, 144 Cal.App.3d 888 (Cal.App.4thDist. 1983) (doctor owed duly to foreseeable victims among traveling public to warn patient not to drive because of her irrational and uncontrolled diabetic condition).
On the other hand, some courts have decided not to extend a duty to third parties. See, e.g., Young v. Wadsworth, 916 S.W.2d 877 (Mo.App.Ct. 1996) (doctor owes no duly to others on the road who were killed and injured by patient who lost consciousness while driving to use reasonable care in treating patient who suffers episodic blackouts); Praesel v. Johnson, 967 S.W.2d 391 (Tex. 1998) (doctor owes no duty of reasonable care in treating epileptic patient to driver of vehicle killed in crash with patient when he suffered a grand mal seizure).
Decisions from jurisdictions declining to find a duty are not persuasive. For example, in Young v. Wadsworth, the Missouri Court of Appeals found the doctor owed no duty to third parties to warn a patient suffering from syncope because a failure to warn could not be the proximate cause of an accident since the patient was aware he suffered blackouts. Young v. Wadsworth, 916 S.W.2d 877, (Mo.App.Ct. 1996). The Court further reasoned, “there is no duty or need to warn of dangers which are open and obvious or which are commonly known.” Young v. Wadsworth 916 S.W.2d 877, 878-79 (Mo.App.Ct. 1996). See also Praesel v. Johnson, 967 S.W.2d 391 (Tex. 1998) (balancing the need for and the effectiveness of a warning to a patient who already knows that he or she suffers from seizures against the burden of liability to third parties).
Upon careful review of the authorities on both sides of the issue, this court concludes that Medina was decided correctly, and the Supreme Judicial Court would find a special relationship in these circumstances. This court finds the contrary cases unpersuasive either because they are not consistent with Massachusetts’ common-law principles, or are distinguishable on the facts.
As noted above, a duiy to act with reasonable care to prevent harm to a plaintiff, which, if violated, may give rise to tort liability, is based on a “special relationship” between the plaintiff and the defendant. Irwin v. Town of Ware, 392 Mass. 745, 756 (1984), citing W. Prosser, Torts §56 (4th ed. 1971). In Irwin, the Supreme Judicial Court stated in pertinent part:
While several different categories of such special relationships are recognized in the common law, they are based to a large extent on a uniform set of considerations. Foremost among these is whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.
Id, at 756.
In the instant case, Dr. McConarty clearly had a special relationship with Ortiz. Arsenault alleges that there was a significant risk that Ortiz would cause grievous bodily harm if he were to be behind the wheel, especially given the medications he took coupled with his low blood sugar levels. Arsenault argues that Dr. McConarty was in the best position to have known of the potentially dangerous situation Ortiz was in and Dr. McConarty could have easily taken reasonable steps to decrease the chances Ortiz would have injured himself or anybody else on the road coming into his path, including Arsenault.
D. Whether the Defendant Physician was Negligent as a Matter of Law
Lastly, Arsenault’s Cross Motion for Summary Judgment must be denied because a dispute of fact exists as to whether Dr. McConarty acted within the standard of care of the average qualified family practitioner in his treatment of Ortiz. Dr. McConarty plans *504 to call two expert witnesses who will disagree with the expert opinions expected to be given by Dr. Steinmann. See Defendant’s Answers to Plaintiffs Interrogatories. For similar reasons articulated above, it is for the juiy to decide between competing expert witnesses whether Dr. McConarty was negligent, or whether he conformed to the appropriate standard of care.
ORDER
For the foregoing reasons, it is ORDERED that Dr. McConarty’s Motion for Summary Judgment is DENIED and Arsenault’s Cross Motion for Summary Judgment is DENIED.