**Wendy Jane SCHMIDT, Individually and as Next Friend of Dylan Schmidt, Minor, Appellant,**

v.

**Mark MAHONEY, Appellee.**

No. 01–1881.

Supreme Court of Iowa.

April 2, 2003.

Gregory T. Racette and Marci B.H. Tooman of Hopkins & Huebner, P.C., Des Moines, for appellant.

Steve Scharnberg, Thomas A. Finley, and Tamara K. Hackmann of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee.

CARTER, Justice.

Plaintiff, Wendy Jane Schmidt, was injured when an approaching driver experienced a seizure, lost control of her vehicle, and crashed into the motor vehicle occupied by plaintiff. Plaintiff appeals an order sustaining a motion to dismiss in her action against Dr. Mark Mahoney, a physician who allegedly advised the seizure victim concerning her ability to operate a motor vehicle. The district court sustained Dr. Mahoney's motion to dismiss on the ground that his duty to provide treatment to his patient did not extend to protecting the public at large from possible adverse consequences of her seizure disorder. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Plaintiff's claim against Dr. Mahoney is based on four legal theories. These are (1) negligent performance of an undertaking so as to establish liability under Restatement (Second) of Torts section 324A (1965), (2) negligent misrepresentation involving the risk of physical harm so as to impose liability under Restatement (Second) of Torts section 311, (3) negligent failure to control the conduct of a third person so as to impose liability under Restatement (Second) of Torts section 315, and (4) medical malpractice.

All of the following facts are alleged by plaintiff in support of her legal theories. Dr. Mahoney was aware that his patient, Kathleen Oxley, had suffered from a seizure disorder since early infancy. He prescribed medications and otherwise treated the seizure disorder. Prior to the event that gave rise to this action, Dr. Mahoney was aware of instances in which Kathleen Oxley lost control of her motor vehicle because of oncoming seizures. Dr. Mahoney failed to warn Kathleen Oxley of the dangers involved in driving a motor vehicle with her seizure disorder and affirmatively advised her that such driving on her part could be safely undertaken.

It is also alleged that Dr. Mahoney provided favorable documentation to the Iowa Department of Transportation as a condition precedent to Oxley obtaining an operator's permit. It is also alleged that all of these acts and omissions created an unreasonable risk to Oxley and other persons sharing the public highways with her. That risk, plaintiff alleges, was realized when Oxley's motor vehicle crashed into a

vehicle occupied by plaintiff, causing serious injury to plaintiff.

Dr. Mahoney moved to dismiss plaintiff's claims prior to answer. The district court sustained the motion after considering each of plaintiff's legal theories. The court concluded that all of these claims fell under the general rule that a medical doctor does not owe a duty to members of the general public with respect to the treatment of an individual patient. The court specifically ruled that "there is no duty running from a doctor to a member of the general public to control the conduct of a patient as to prevent her from causing a motor vehicle accident."

Plaintiff argues that this court has already decided the issues favorable to her position in *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa 1973). In that case, this court by a five-four vote held that a petition alleging a medical doctor's negligence in counseling a patient concerning a seizure disorder stated a valid claim on the part of a third party with whom the seizure patient collided on the highway. In so ruling, a plurality of the justices relied in part on section 311 of the Restatement (Second) of Torts in reaching that conclusion. That provision states:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311. Comment b of this section of the Restatement specifically refers to the duty of a physician to give correct information as to the character of a disease when such knowledge is necessary for the safety of the patient or others.

Dr. Mahoney points out that, since our decision in *Freese*, we have declared that it is an unwarranted intrusion on the relationship between health-care providers and their patients to recognize a right of action in favor of a member of the general public based on actions of a health-care provider in directing the activities of a patient. The most decisive decision in this regard is *J.A.H. v. Wadle & Associates, P.C.*, 589 N.W.2d 256 (Iowa 1999). In that case, we concluded that there was no duty to a nonpatient third party in the medical malpractice context, stating:

"A number of considerations relevant to the duty analysis strongly militate against imposition of duty here.... Concern about how a course of treatment might affect third parties could easily influence the way in which therapists treat their patients. Under a rule imposing a duty of care to third parties therapists would feel compelled to consider the possible effects of treatment choices on third parties and would have an incentive to compromise their treatment because of the threatened liability. This would be fundamentally inconsistent with the therapist's obligation to the patient.... Hoping to avoid liability to third parties, ... a therapist might instead find it necessary to deviate from the treatment the therapist would normally provide, to the patient's ultimate detriment. This would exact an intolerable high price from the patient-thera-

pist relationship and would be destructive of that relationship."

*Wadle,* 589 N.W.2d at 262–63 (quoting *Doe v. McKay,* 183 Ill.2d 272, 233 Ill.Dec. 310, 700 N.E.2d 1018, 1023–24 (1998)). *Wadle* involved the alleged acts and omissions of mental health care providers. We made a similar analysis in *Leonard v. State,* 491 N.W.2d 508 (Iowa 1992), a case involving alleged acts and omissions of the medical staff at a state hospital. We recognized a special relationship between physician and patient, but concluded that "the risks to the general public posed by the negligent release of dangerous mental patients would be far outweighed by the disservice to the general public if treating physicians were subject to civil liability for discharge decisions." *Leonard,* 491 N.W.2d at 512.

Dr. Mahoney urges, and we agree, it is highly likely that a consequence of recognizing liability to members of the general public on the facts of this case will be that physicians treating patients with seizure disorders will become reluctant to allow them to drive or engage in any other activity in which a seizure could possibly harm a third party. In order to curtail liability, physicians may become prone to make overly restrictive recommendations concerning the activities of their patients and will exercise their role as reporters to the department of transportation in an inflexible manner not in their patient's best interest. We are unable to distinguish, on public-policy grounds, the potential for disrupting the physician-patient relationship that would arise from recognizing liability in the present case from the potential for damaging that relationship recognized in *Wadle* and *Leonard.*

Consequently, although the allegations of plaintiff's petition appear to state a claim for liability under the broad general rules espoused in section 311 and section 324A of the Restatement, we are convinced that application of those rules to a claim by a member of the general public would run counter to the public-policy considerations that we recognized in *Wadle* and *Leonard.* To the extent that *Freese v. Lemmon* espouses a different view, that decision is overruled.

Plaintiff's malpractice claim and her claim based on section 315 of the Restatement have a like potential for compromising the physician-patient relationship. Our existing cases interpreting section 315 of the Restatement negate any right to claim under that section on the present facts. *Leonard,* 491 N.W.2d at 510–11; *Fitzpatrick v. State,* 439 N.W.2d 663, 667–68 (Iowa 1989). Plaintiff's malpractice claim is also defective based on a lack of legal duty between physician and a third party. *Wadle,* 589 N.W.2d at 260.

We believe our failure to recognize a basis for liability in the present case is consistent with the position that the legislature has taken with respect to actions by health care providers. With respect to permitting persons with health impediments to operate a motor vehicle on the highways, the legislature has provided:

> A physician ... may report to the department the identity of a person who has been diagnosed as having a physical or mental condition which would render the person physically or mentally incompetent to operate a motor vehicle in a safe manner.... A physician ... making a report under this section shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed as a result of the report. A physician ... has no duty to make a report or to warn third parties with regard to any knowledge concerning a person's mental or physical competency to operate a motor vehicle in a safe manner....

Iowa Code § 321.186. The language of this statute precludes recovery on plaintiff's claims involving the documentation that Dr. Mahoney provided to the department of transportation. Although the language of the statute does not embrace claims based on advice that doctors give their patients, we believe that the same policies that justify immunity from suit with respect to licensing recommendations to government officials preclude us from recognizing liability to members of the general public based on advice that is communicated to a patient by a physician.

In affirming the judgment of the district court, we recognize that an order granting a motion to dismiss for failure to state a claim may only be upheld if the petition on its face fails to set forth facts upon which relief could be granted under any circumstances. *Fitzpatrick*, 439 N.W.2d at 665; *Cole v. Taylor*, 301 N.W.2d 766, 767 (Iowa 1981); *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977). Nevertheless, in other cases decided on the basis that no legal duty existed, we have approved disposition by means of such a motion. *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991); *Callahan v. State*, 385 N.W.2d 533, 537–38 (Iowa 1986); *Smith v. State*, 324 N.W.2d 299, 301–02 (Iowa 1982). For the reasons that we have discussed, we are prompted to approve the same disposition in the present case. The district court did not err in granting Dr. Mahoney's motion to dismiss.

**AFFIRMED.**