#24943, #24947-aff in pt, rev in pt & rem-JKK

2009 SD 40

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CATHERINE ROSE MCGUIRE,                        Plaintiff and Appellant,


    v.


DEAN J. CURRY,                                 Defendant and Third-
                                               Party Plaintiff,

    and

PARK JEFFERSON SPEEDWAY, INC.,                 Defendant, Third-Party
a South Dakota Corporation,                    Plaintiff and Appellee,


    v.


CHRISTOPHER ERIC MOLLET,                       Third-Party Defendant
                                               and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STEVEN R. JENSEN
Judge

* * * *

ARGUED ON MARCH 24, 2009

OPINION FILED 05/20/09

\* \* \* \*

RONALD A. PARSONS, JR. of
Johnson, Heidepriem, Janklow,
  Abdallah & Johnson, LLP
Sioux Falls, South Dakota

GRANT G. ALVINE
DAVID J. KING of
Alvine & King, LLP                        Attorneys for plaintiff
Sioux Falls, South Dakota                 and appellant McGuire.

JOEL D. VOS                               Attorneys for defendant,
JAMES W. REDMOND of                       third-party plaintiff
Heidman Law Firm, LLP                     and appellee Park
Sioux City, Iowa                          Jefferson Speedway.

SUSAN M. SABERS of                        Attorneys for third-
Fuller & Sabers, LLP                      party defendant and
Sioux Falls, South Dakota                 appellant Mollet.

KONENKAMP, Justice

[¶1.]     An underage employee, who had unlimited access to his employer's alcoholic beverages, drank to intoxication while at work. After his shift ended, the employee drove his vehicle off the premises and struck the plaintiff, who was a passenger on a motorcycle. She brought suit against the employee and the employer. As to the employer, the plaintiff alleged negligence per se, based on a violation of SDCL 35-4-79, and common law negligence for failure to exercise ordinary care in the hiring and supervision of the employee. The employer moved for summary judgment, asserting that it owed no duty to the plaintiff. The circuit court agreed, and plaintiff appeals. Because it was foreseeable that a member of the general public could be injured when the employer provided an employee, who was below the drinking age, unsupervised and unrestricted access to alcoholic beverages, we conclude that the employer owed a duty to the plaintiff.

## Background

[¶2.]     On August 16, 2003, Dean J. Curry, age 20, an employee of Park Jefferson Speedway, Inc., left work an hour after his shift ended. It was 12:45 a.m. Curry drove around the Speedway racetrack a couple times in his pickup, cut through a ditch, and entered a road bordering the Speedway's property. He was drunk, speeding, and driving on the wrong side of the road. Not seeing a northbound motorcycle driven by Chris Mollet, on which Catherine McGuire was a passenger, Curry collided with the motorcycle. McGuire was seriously injured.

[¶3.]        McGuire brought suit against the Speedway and Curry.[1]  She alleged that Curry was negligent in the operation of his vehicle.  As against the Speedway, McGuire claimed that it negligently hired, retained, and supervised Curry, was negligent per se based on SDCL 35-4-79, and was liable based on the theory of respondeat superior.[2]  Curry was underage for consuming alcoholic beverages.  Nonetheless, the Speedway had hired him as a "runner" to deliver alcohol and other supplies to its concession stands and bars.

[¶4.]        After hiring Curry as a runner, the Speedway gave him a key to its alcohol storage facility.  The Speedway did nothing to monitor Curry's access to, and possible pilfering and consumption of, the company's alcohol.  Nor did it check the amount of alcohol sold or used on any given night.  Moreover, the Speedway was unaware when it hired Curry that he had an extended history of substance abuse.  With his unmonitored access, Curry would later admit that he drank every night from the beginning of his shift until the end.  On the evening of the accident, Curry had two beers, four vodka drinks, two whiskey and cokes, and a rum drink.  After his shift, while still in the Speedway's parking lot, Curry drank a 32-ounce beer.

---

1.    The Speedway filed a third party complaint against Mollet, alleging that it was entitled to indemnity or contribution for any judgment or settlement amount it was required to pay.  Mollet cross-claimed against the Speedway and Curry seeking contribution and indemnity.  Curry responded by cross-claiming against Mollet for indemnity and contribution.

2.    SDCL 35-4-79 provides in part:  "No on-sale licensee may permit any person less than twenty-one years old to loiter on the licensed premises or to sell, serve, dispense, or consume alcoholic beverages on such premises."

[¶5.] The circuit court granted the Speedway's motion for summary judgment concluding that the Speedway owed no duty to McGuire under theories of negligent hiring, retention, and supervision.[3] The court based its conclusion on the fact that the accident happened off the Speedway's property and not with any Speedway equipment. The court also declined to find a duty based on McGuire's claim of negligent hiring and training because Curry's job did not place him in contact with the general public. The court rejected McGuire's argument that SDCL 35-4-79 created a duty on the part of the Speedway because the statute was designed to protect the underaged and not the public at large. Finally, the court declined to find that the Speedway voluntarily assumed a duty to protect McGuire by adopting a no drinking policy at work.

[¶6.] McGuire appeals asserting that the court erred when it granted the Speedway's motion for summary judgment on the grounds that it owed no duty to McGuire on her claims of negligent hiring and supervision, negligence per se under SDCL 35-4-79, and assumption of an affirmative duty.[4]

## Analysis and Decision

[¶7.] Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

3.  The circuit court did not have the benefit of our decision in *Kirlin v. Halverson*, 2008 SD 107, 758 NW2d 436, which was decided after the court's summary judgment ruling.

4.  Mollet similarly appealed the court's order granting the Speedway summary judgment. Mollet moved this Court to consolidate his and McGuire's appeals under SDCL 15-26A-4. The Speedway joined the motion and this Court granted consolidation.

any, show that there is no genuine issue of material fact[.]" SDCL 15-6-56(c).

Summary judgment is usually inappropriate in a negligence case, except when no

duty exists as a matter of law. Bordeaux v. Shannon County Schools, 2005 SD 117,

¶11, 707 NW2d 123, 126 (citation omitted). We review de novo a circuit court's

conclusion that the defendant owed no duty to the plaintiff. *Id.* (citation omitted).

[¶8.]          McGuire argues that both SDCL 35-4-79 and the common law created

a legal duty on the Speedway to supervise Curry to prevent him from having

unmonitored access to alcohol and becoming intoxicated on the job. According to

McGuire, the Speedway violated SDCL 35-4-79, which prohibits an on-sale licensee

from allowing underage persons to consume alcohol on the premises. This violation,

McGuire contends, constitutes negligence per se. She also asserts that, because the

Speedway instituted a no-drinking policy for underage employees, the Speedway

undertook an affirmative duty to protect the general public from its employees who

drink at work. Finally, McGuire contends that it was foreseeable to the Speedway

that negligently allowing Curry unmonitored access to alcohol would allow him to

consume these beverages, become intoxicated, and cause injury to members of the

general public.

[¶9.]          Absent legislative preemption, courts decide the existence of a legal

duty because it is "'entirely a question of law, to be determined by reference to the

body of statutes, rules, principles and precedents which make up the law. . . .'"

Tipton v. Town of Tabor, 1997 SD 96, ¶11, 567 NW2d 351, 357 (*Tipton II*) (quoting

W. Page Keeton, *et al.*, *Prosser & Keeton on the Law of Torts* § 37, at 236 (5thed

1984)). When a duty is alleged based on the common law, its existence depends on

the foreseeability of injury. *Luke v. Deal*, 2005 SD 6, ¶19, 692 NW2d 165, 170 (quoting *Poelstra v. Basin Elec. Power Co-op.*, 1996 SD 36, ¶16, 545 NW2d 823, 826). Foreseeability is examined at the time the alleged negligent act occurred, not when the damage was done. *Id.*

[¶10.]      SDCL 35-4-79 prohibits any "on-sale licensee" from *permitting* "any person less than twenty-one years old to loiter on the licensed premises or to sell, serve, dispense, or consume alcoholic beverages on such premises." To McGuire, the fact that the statute prohibits the Speedway from *permitting* an underage person to consume alcoholic beverages on the premises means that the Legislature intended to create "a duty to use ordinary care in supervising . . . underage employees to prevent them from freely consuming alcohol and becoming intoxicated on [the] premises[.]"

[¶11.]      But what does the term "permit" specifically entail? Must it include knowledge? Although we have not dealt with this question before, other courts have grappled with the problem, a few concluding that knowledge is not a requisite element, thus effectively making an underage violation on a licensee's premises a strict liability offense. One California decision, however, expressed what we think is the better rule:

> Once a licensee knows of a particular violation of the law, [the] duty becomes specific and focuses on the elimination of the violation. Failure to prevent the problem from recurring, once the licensee knows of it, is to "permit" by a failure to take preventive action.

*Laube v. Stroh*, 3 CalRptr2d 779, 789 (CalCtApp 1992) (citing *Marcucci v. Bd. of Equalization*, 292 P2d 264 (Cal 1956)). "The concept that one may permit

something of which he or she is unaware does not withstand analysis." *Id.* at 785.

We conclude that SDCL 35-4-79 does not impose a specific duty on an on-sale

licensee to prevent an underage employee from consuming alcohol, when that on-

sale licensee has no knowledge of a liquor law violation by the underage employee.

The statute is clear: the on-sale licensee cannot *permit* the consumption of alcohol

on the premises. There was no permission here (tacit or explicit), only a lack of

supervision to prevent consumption. Moreover, the Speedway had a no-drinking

policy in force prohibiting its underage employees from consuming alcoholic

beverages, and, as McGuire acknowledges, the Speedway was not aware that Curry

was drinking on the premises. There being no *permission*, SDCL 35-4-79 is not

implicated.

[¶12.]      McGuire next asserts that the Speedway undertook a duty to protect

the general public when it adopted a no-drinking policy for its underage employees,

thus acknowledging its responsibility to supervise underage employees given access

to alcohol. She relies on the Restatement (Second) of Torts § 324A, and *Hoekman v.*

*Nelson*: "one who assumes to act, even though gratuitously, may thereby become

subject to the duty of acting carefully, if he acts at all." 2000 SD 99, ¶10, 614 NW2d

821, 825 (citations omitted); *see also* Barger v. Cox, 372 NW2d 161, 167 (SD 1985)

(duty existed because employer controlled employees by imposing regulations on

them and recognizing a power to exercise control over them).

[¶13.]      Mere adoption of a no-drinking policy for underage employees while

the employees are on the clock is not sufficient action on the part of the Speedway to

constitute an acceptance of an affirmative duty. To conclude otherwise would

discourage employers from adopting policies that prohibit dangerous conduct by their employees. We decline to hold that an employer affirmatively undertakes a general duty to the public based on the sole fact that the employer adopted a no-drinking policy. Courts considering similar questions have concluded the same. *See* Meyers v. Grubaugh, 750 P2d 1031, 1037 (Kan 1988); Premo v. General Motors Corp., 533 NW2d 332, 333 (MichCtApp 1995); Estate of Catlin v. General Motors Corp., 936 SW2d 447, 451 (TexCtApp 1996); Killian v. Caza Drilling, Inc., 131 P3d 975, 984-989 (Wyo 2006).

[¶14.]    McGuire also contends that the Speedway negligently hired Curry when it failed to conduct a background check or at least inquire into his competence and fitness to handle a position involving unlimited and unmonitored access to alcohol. After the accident, it was discovered that Curry had a history of substance abuse and failed to complete his court-ordered drug and alcohol treatment. According to McGuire, had the Speedway conducted a background check, asked Curry questions during his application process about his background, or asked Curry's family, who also worked at the Speedway, about Curry's ability to handle the position of an alcoholic beverage runner, the Speedway would have learned of Curry's unfitness. Because the Speedway failed to inquire into Curry's background, McGuire claims it was foreseeable to the Speedway that it could negligently hire an employee who could injure a member of the general public.

[¶15.]    "[A] negligent hiring claim suggests that *at the time an employee was hired,* it was negligent for an employer to engage the employee's services based on what the employer knew or should have known about the employee." Kirlin v.

Halverson, 2008 SD 107, ¶45, 758 NW2d 436, 452 (emphasis in original). In *Kirlin*, we recognized an employer's limited duty to conduct a background investigation before hiring an employee. *Id.* ¶¶47-48. When an employee comes into minimum contact with the public or those in a special relationship with the employer, the employer need not perform a background investigation. *Id.* The opposite is true when the employee makes frequent contact with the public and those in a special relationship with the employer. *Id.*

[¶16.]        McGuire concedes that Curry's contact with the public was minimal, but insists that the Speedway had a duty to investigate his background because Curry's employment position involved unmonitored access to alcohol. No authority was cited for this proposition, and we cannot, absent any authority, embrace a rule that when an employer hires an underage person for a position that gives the employee access to alcohol, whether the employment is full-time, part-time, or temporary, that the employer must conduct a background check. Our law provides that when an employee position requires frequent contact with the public, the need for a background check increases. *Id.* Here there was no such contact alleged, and therefore, the Speedway owed no duty to McGuire to investigate Curry's background.

[¶17.]        McGuire last argues that the Speedway negligently supervised Curry, when it provided him, an underage employee, with unmonitored access to alcoholic beverages. According to McGuire, it was foreseeable to the Speedway that when it gave Curry unfettered access to alcohol, freeing him to become intoxicated while working, that such access and resulting intoxication could cause Curry to injure a

member of the general public. In response, the Speedway insists that it had no duty to supervise Curry with respect to the harm he caused McGuire because the harm was caused off the Speedway's property and not with any Speedway equipment. In support of this argument, the Speedway contends that the Restatement (Second) of Torts § 317, *Duty of Master to Control Conduct of Servant*, governs McGuire's negligent supervision claim.

[¶18.]      "[A] negligent supervision claim alleges that the employer inadequately or defectively *managed, directed or oversaw* its employees." *Kirlin*, 2008 SD 107, ¶45, 758 NW2d at 452 (emphasis in original). The Restatement, § 317, on the other hand, implicates an employer's duty to *control* employees *when* the employees are acting outside the scope of employment. While both a negligent supervision claim and a Restatement § 317 claim might involve conduct outside the scope of employment, a negligent supervision claim implicates more than the employer's duty to *control* the employee. A claim of negligent supervision avers that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees so as to prevent harm to other employees or third persons. A duty to control, in contrast, examines whether the employee caused harm while using a chattel of the employer or while on the premises of the employer, which conduct the employer could and should control. Restatement (Second) of Torts § 317. Therefore, a claim of negligent supervision is separate from

a claim that an employer breached its duty to control its employee based on Restatement § 317.[5]

[¶19.]     Nonetheless, whether a claim is asserted under the Restatement or the common law, a prerequisite to proceeding on the cause of action is establishing the existence of a duty. *Poelstra*, 1996 SD 36, ¶7, 545 NW2d at 825. Generally, one owes no duty to prevent the misconduct of a third party. *See Kirlin*, 2008 SD 107, ¶31, 758 NW2d at 448-49. However, when the injury is foreseeable a duty may exist where not otherwise recognized. First American Bank & Trust, N.A. v. Farmers State Bank, 2008 SD 83, ¶16, 756 NW2d 19, 26; *Luke*, 2005 SD 6, ¶19, 692 NW2d at 170; *Poelstra*, 1996 SD 36, ¶16, 545 NW2d at 826. Foreseeability in the duty sense is examined at the time of the alleged negligence, not at the time injury occurred. *First American*, 2008 SD 83, ¶46, 756 NW2d at 32 (Konenkamp, J., dissenting); *Poelstra*, 1996 SD 36, ¶18, 545 NW2d at 827.

[¶20.]     We first examine whether the Speedway had a duty to control Curry under the Restatement (Second) of Torts § 317. This section provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
>       (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>       (ii) is using a chattel of the master, and

---

5.     Indeed, this Court in *Kirlin* examined separately the claims of negligent hiring, supervision, retention, and Restatement (Second) of Torts § 317.

(b) the master

      (i) knows or has reason to know that he has the ability to control his servant, and
      (ii) knows or should know of the necessity and opportunity for exercising such control.

*Id.* Plainly, the Restatement did not apply here to create a duty on the Speedway to control Curry. When Curry caused the accident seriously injuring McGuire he was not on the premises of the Speedway and was not using a Speedway chattel.

[¶21.]     We next consider whether the Speedway owed McGuire a duty to exercise ordinary care in the supervision of Curry's employment at the Speedway. Because a duty depends on foreseeability of injury, we examine the alleged negligent conduct to determine whether it was foreseeable that a member of the general public could be injured by that conduct. Here, the alleged negligent conduct was allowing Curry, an underage employee, unsupervised and unrestricted access to alcoholic beverages during each of his shifts and failing to supervise him to prevent him from becoming intoxicated while at work.

[¶22.]     The Speedway hired Curry to "run" beer, hard liquor, and other items to the concessions on the Speedway's property. Curry had a key to the company's liquor and alcohol storage facility. Underage, Curry immediately became aware that no one monitored him or the company's alcohol supply. Shortly after beginning his employment, Curry stated that he started drinking while on the job. He said that he would typically drink a beer or two at the beginning of his shift. Then, using a pop glass, he would continue to drink Smirnoff Ice, Jack Daniels and coke, or Bacardi rum throughout the rest of his shift. He claimed that it was "easy" to

drink the Speedway's alcohol during every shift and that he was not worried about drinking on the premises.

[¶23.]     While we acknowledge that the Speedway imposed a no-drinking policy for underage employees, it was nonetheless foreseeable that by providing an underage employee unrestricted and unsupervised access to alcoholic beverages, the employee could take advantage of the lax circumstances and indulge to excess. Curry not only took advantage of his position on occasion, but revealed that he drank every day on the job except his first day. He even made an unauthorized copy of the key to the Speedway's alcohol storage facility, confident of his employer's lack of supervision.

[¶24.]     We conclude that the Speedway had a duty to supervise Curry — a duty to be aware of any problems with Curry's free access to the company's alcoholic beverages. It was foreseeable to an ordinary reasonable person that by not supervising an underage employee afforded free reign to consume alcohol while at work, that the employee could abuse the alcohol, leave the premises after work unfit to drive, and injure a member of the general public. The court erred when it held that the Speedway owed no duty to McGuire.[6]

[¶25.]     Affirmed in part, reversed in part, and remanded.

[¶26.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, Justices and SEVERSON, Circuit Judge, concur.

---

6.     Our analysis here is distinguished from *Wegleitner v. Sattler*, 582 NW2d 688 (SD 1998), which involved the interpretation of SDCL 35-11-1, when a third party was injured by an intoxicated bar patron.

#24943, #24947

[¶27.]     SEVERSON, Circuit Judge, sitting for SABERS, Retired Justice, disqualified.