#30558-a-SPM
**2025 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LONNIE TWO EAGLE, SR.,             Plaintiff and Appellant,

     v.

AVEL ECARE, LLC,
MOONLIGHTING SOLUTIONS, LLC,
and MATTHEW C. SMITH,             Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TODD COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BOBBI J. RANK
Judge

* * * *

JON J. LAFLEUR of
Zephier & LaFleur, P.C.
Rapid City, South Dakota             Attorneys for plaintiff
                                            and appellant.


MATTHEW D. MURPHY
ROGER A. SUDBECK
DAVID HIEB of
Boyce Law Firm, LLP
Sioux Falls, South Dakota             Attorneys for defendant and
                                            appellee Avel eCare.

* * * *

ARGUED
JUNE 6, 2024
OPINION FILED **02/05/25**

\* \* \* \*

SARA FRANKENSTEIN of
Gunderson, Palmer, Nelson
    & Ashmore, LLP
Rapid City, South Dakota

CATHERINE A. SEELEY of
Gunderson, Palmer, Nelson
    & Ashmore, LLP
Pierre, South Dakota

Attorneys for defendants and appellees Moonlighting Solutions, LLC and Matthew C. Smith.

#30558

MYREN, Justice

[¶1.]        Lonnie Two Eagle, Sr., appeals from the circuit court's summary judgment in favor of Avel eCare, LLC (Avel), Moonlighting Solutions, LLC (Moonlighting), and Dr. Matthew Smith.  Chad Sully[1] suffered a seizure while driving and collided with Two Eagle, who was operating a lawn mower.  Two Eagle sued Dr. Smith and the two entities (Avel and Moonlighting) that contracted with him to provide medical services to Rosebud Indian Health Services Hospital.  The circuit court granted the Defendants' motions for summary judgment, concluding Dr. Smith owed no duty of care to Two Eagle.  We affirm.

**Factual and Procedural History**

[¶2.]        Avel contracted with Rosebud Indian Health Services Hospital to provide telemedicine services.  Avel, in turn, contracted with Moonlighting to use its independently contracted physicians to provide medical care in specialized areas of medicine.  Dr. Smith, a neurologist, contracted with Moonlighting to provide neurologic care to patients at the Hospital.

[¶3.]        On January 13, 2019, Sully experienced a seizure and was treated at the Hospital, although not by Dr. Smith.  Sully had additional seizures on March 12, 2019, and April 11, 2019, and was again treated at the Hospital, but not by Dr. Smith.  Dr. Smith reviewed Sully's medical chart and first saw him during a telemedicine visit on April 16, 2019.  At that visit, Sully informed Dr. Smith he had eight seizures between January and April 2019.  Dr. Smith increased Sully's prescribed seizure medication (Keppra) and directed Sully not to drive until he was

---

1.        Sully is not a party to this lawsuit.

-1-

free of seizures for six months. After additional testing, Sully again saw Dr. Smith on July 23, 2019. At that visit, Dr. Smith incorrectly noted that Sully had been free of seizures since February 2019.[2] Dr. Smith informed Sully he would be medically eligible to return to driving when he was seizure-free for six months.

[¶4.]       On August 5, 2019, Sully suffered a seizure while driving and hit Two Eagle, who was operating a riding lawn mower. Two Eagle sustained severe injuries. Two Eagle sued Avel, Moonlighting, and Dr. Smith,[3] alleging medical malpractice and ordinary negligence in his amended complaint.

[¶5.]       After discovery, Avel, Moonlighting, and Dr. Smith filed motions for summary judgment, arguing that Dr. Smith owed no duty to Two Eagle and that imposing such a duty of care would contravene public policy. The circuit court granted the motions for summary judgment, concluding Dr. Smith did not owe a duty of care to Two Eagle under either a medical malpractice or ordinary negligence theory of recovery. Two Eagle appeals.

---

2.    The reason for this error is disputed. Dr. Smith claims that Sully incorrectly stated he had been seizure free since February 2019. The Court accepts Sully's version as true for purposes of his appeal from summary judgment. *Burgi v. E. Winds Ct., Inc.*, 2022 S.D. 6, ¶ 15, 969 N.W.2d 919, 923. While this disputed fact could be relevant to whether a duty was breached, it does not impact the sole question presented in this appeal—whether Dr. Smith owed a duty to Two Eagle.

3.    Respondeat superior is Two Eagle's only basis for claims against Avel and Moonlighting.

## Standard of Review

[¶6.]     "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Burgi v. E. Winds Ct., Inc.*, 2022 S.D. 6, ¶ 15, 969 N.W.2d 919, 923 (quoting *Ridley v. Sioux Empire Pit Bull Rescue, Inc.*, 2019 S.D. 48, ¶ 11, 932 N.W.2d 576, 580). "We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.* (quoting *Ridley*, 2019 S.D. 48, ¶ 11, 932 N.W.2d at 580).

[¶7.]     "While negligence actions are generally not suited for summary judgment, such a result is proper when the duty question is resolved in the defendant's favor." *Kuehl v. Horner (J.W.) Lumber Co.*, 2004 S.D. 48, ¶ 10, 678 N.W.2d 809, 812.  The existence of a legal duty is a question of law that is reviewed de novo.  *See Burgi*, 2022 S.D. 6, ¶ 16, 969 N.W.2d at 923 (citing *Sheard v. Hattum*, 2021 S.D. 55, ¶ 23, 965 N.W.2d 134, 141) (other citation omitted).

## Decision

[¶8.]     Two Eagle alleged two causes of action—medical malpractice and ordinary negligence.  Under either cause of action, Two Eagle must establish: "(1) a duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Kuehl*, 2004 S.D. 48, ¶ 10, 678 N.W.2d at 812 (citation omitted); *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 31, 612 N.W.2d 600, 608.

[¶9.] The crux of this appeal is the existence of a duty, which, if established, "requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks." *Davies v. GPHC, LLC*, 2022 S.D. 55, ¶ 18, 980 N.W.2d 251, 258 (ellipses omitted) (citation omitted). For the law to impose a duty, there must be either (1) a relationship or (2) the injuries must be foreseeable. *Kuehl*, 2004 S.D. 48, ¶ 10, 678 N.W.2d at 812. Two Eagle contends that Dr. Smith owed him a duty of care based on both a special relationship and foreseeability.

### *Whether Dr. Smith had a duty to protect Two Eagle based on the relationship between Dr. Smith and Sully.*

[¶10.] Two Eagle admits there is no relationship between him and any of the Defendants that would give rise to a duty. Instead, Two Eagle relies on the relationship between Dr. Smith and Sully. "Generally, the law imposes no duty to prevent the misconduct of a third person." *Koenig v. London*, 2021 S.D. 69, ¶ 22, 968 N.W.2d 646, 653 (citation omitted). In so holding, this Court relied in part on the Restatement (Second) of Torts § 315 (1965), which provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another *unless* (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Koenig*, 2021 S.D. 69, ¶ 23, 968 N.W.2d at 653 (quoting Restatement (Second) of Torts § 315 (1965)).

[¶11.] There are special relationships that may give rise to such a duty under a variety of circumstances, including employer-employee, parent-child, and invitee-

landowner. *Id.* ¶ 24. This case does not involve any of the special relationships identified in *Koenig*.

[¶12.] Instead, Two Eagle contends there was a sufficient relationship between Dr. Smith and Sully to create a duty to Two Eagle by operation of the Restatement (Second) of Torts § 324A (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > a) his failure to exercise reasonable care increases the risk of such harm, or
> > b) he has undertaken to perform a duty owed by the other to the third person, or
> > c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[¶13.] Two Eagle alleged that Dr. Smith was negligent in (1) "treating, consulting, and advising Sully regarding Sully's seizure condition [and] in authorizing Sully to operate a motor vehicle despite Sully's seizure history and his recent seizures;" and (2) "failing to read and understand Sully's past medical records and mistakenly authorizing Sully to operate a motor vehicle." Two Eagle claims this negligence caused the collision that injured him. Even assuming these allegations are true, they are insufficient to establish a duty under section 324A of the Restatement.

[¶14.] Section 324A of the Restatement is often referred to as the "Good Samaritan" doctrine. *See Kuehl*, 2004 S.D. 48, ¶ 24, 678 N.W.2d at 814 (Meierhenry, J., dissenting); *Appley Bros. v. United States*, 924 F. Supp. 944, 962 (D.S.D. 1996), aff'd, 164 F.3d 1164 (8th Cir. 1999). The threshold question in

determining the existence of duty under the Good Samaritan doctrine is whether the defendant undertook steps to ensure the safety of the plaintiff. *See Good v. Ohio Edison Co.*, 149 F.3d 413, 420 (6th Cir. 1998); *Kynerd v. U.S. Dep't of Hous. & Urban Dev.*, 607 F. Supp. 117, 120 (S.D. Miss. 1985), aff'd sub nom. *Kynerd v. U.S. Dep't of HUD*, 806 F.2d 259 (5th Cir. 1986); *Edwards v. GE Lighting Sys., Inc.*, 685 S.E.2d 146, 149 (N.C. Ct. App. 2009). Two Eagle has not satisfied this preliminary requisite of section 324A, which is that the purpose of Dr. Smith's care and treatment of Sully was to benefit Two Eagle.

[¶15.] Further, the plain language of section 324A requires that Two Eagle demonstrate that Dr. Smith's failure to exercise reasonable care *increased* the risk of harm to him. *See* Restatement (Second) of Torts § 324A (1965). The "'test is not whether the risk was increased over what it would have been if the defendant had not been negligent,' but rather whether 'the risk [wa]s increased over what it would have been had the defendant not engaged in the undertaking at all.'" *Good*, 149 F.3d at 421 (quoting *Myers v. United States*, 17 F.3d 890, 903 (6th Cir. 1994)). In *Myers*, the court explained the basis for that interpretation:

> This must be so because the preliminary verbiage in Section 324A assumes negligence on the part of the defendant and further assumes that this negligence caused the plaintiff's injury. If we were to read subsection (a) as plaintiffs suggest, *i.e.*, that a duty exists where the negligence increased the risk over what it would have been had the defendant exercised due care, a duty would exist in every case. Such a reading would render subsections (b) and (c) surplusage and the apparent purpose of all three subsections to limit application of the section would be illusory.

17 F.3d 890, 903 (6th Cir. 1994). *Cf. Englund v. Vital*, 2013 S.D. 71, ¶ 41, 838 N.W.2d 621, 634 (Konenkamp, J., concurring in result) (construing Restatement

(Second) of Torts § 323 (1965), which parallels section 324A, and concluding defendant did not undertake gratuitous duty to protect child, noting the defendant's failure to remove the rocks they agreed to remove "did not *increase* the risk of harm; that is, it did not make the situation worse than it had been.").

[¶16.]     The illustration provided in section 324A also describes a scenario where the tortfeasor's mere act of providing the service, not his negligence in doing so, increases the risk of harm to the third party:

> A operates a grocery store. An electric light hanging over one of the aisles of the store becomes defective, and A calls B Electric Company to repair it. B Company sends a workman, who repairs the light, *but leaves the fixture so insecurely attached that it falls upon and injures C*, a customer in the store who is walking down the aisle. B Company is subject to liability to C.

Restatement (Second) of Torts § 324A (1965), cmt. c, illus. 1 (emphasis added). Initially, the defective light created no risk of harm to the customer; thus, had the workman not undertaken the repair, there would have been no risk to the customer. However, when the workman undertook his repair and failed to exercise reasonable care in doing so (by leaving the fixture insecurely attached), the workman's actions increased the risk of harm to the customer.

[¶17.]     Here, Dr. Smith was treating Sully for his seizures and, in doing so, told Sully not to drive until seizure-free for six months. During Dr. Smith's treatment of Sully, Dr. Smith allegedly incorrectly told Sully he could begin driving before that period elapsed. Even if true, Dr. Smith's act of providing treatment to Sully did not increase the risk of harm to Two Eagle. Instead, according to Two Eagle, it was Dr. Smith's alleged negligence that increased the harm to him. In other words, Two Eagle has not shown that Dr. Smith turned a non-hazardous

condition into a hazardous one or that Dr. Smith increased the risk of harm from Sully driving over what it would have been had Dr. Smith provided no medical care to Sully at all. As such, Dr. Smith owed no duty to Two Eagle under section 324A(a).

### Whether Dr. Smith had a duty to protect Two Eagle based on the foreseeability of harm.

[¶18.] Two Eagle also asserts that a risk of harm to him was foreseeable as a result of Dr. Smith's treatment of Sully. Two Eagle contends this foreseeable risk imposed a duty on Dr. Smith to protect Two Eagle from that risk of harm.

[¶19.] "Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation." *Johnson v. Hayman & Associates, Inc.*, 2015 S.D. 63, ¶ 13, 867 N.W.2d 698, 702 (citations omitted). "The risk reasonably to be perceived defines the duty to be obeyed." *Id.* ¶ 15 (citations omitted). "No one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." *Id.* (citations omitted).

[¶20.] Two Eagle claims that the "issuance of the driving restriction showed that Smith foresaw the risk of injury to Sully and to the public who would encounter Sully on the road," relying on *McGuire v. Curry*, 2009 S.D. 40, ¶ 8, 766 N.W.2d 501, 505. In that case, the plaintiff was injured by an underage employee of a motor speedway who became drunk while working, despite the speedway's no-drinking policy for underage employees. *Id.* McGuire argued that the "Speedway undertook a duty to protect the general public when it adopted a no-drinking policy for its underage employees, thus acknowledging its responsibility to supervise underage

-8-

employees given access to alcohol." *Id.* ¶ 12, 766 N.W.2d at 506. The Court rejected that argument and explained:

> Mere adoption of a no-drinking policy for underage employees while the employees are on the clock is not sufficient action on the part of the Speedway to constitute an acceptance of an affirmative duty. To conclude otherwise would discourage employers from adopting policies that prohibit dangerous conduct by their employees. *We decline to hold that an employer affirmatively undertakes a general duty to the public* based on the sole fact that the employer adopted a no-drinking policy.

*Id.* ¶ 13, 766 N.W.2d at 506–07 (emphasis added). However, based on the employee's underage status and free access to the company's alcoholic beverages, the Court concluded that Speedway had a duty to supervise the underage employee. *Id.* ¶ 24, 766 N.W.2d at 509. The Court concluded that it was "foreseeable to an ordinary reasonable person that by not supervising an underage employee afforded free reign to consume alcohol while at work, that the employee could abuse the alcohol, leave the premises after work unfit to drive, and injure a member of the general public."[4] *Id.* Unlike Speedway's duty to supervise an underage employee who had free access to alcohol, Dr. Smith had no duty to supervise Sully in any respect.

---

4. Two Eagle claims that Dr. Smith is "subject to liability to third parties for his ordinary negligence," citing *Kuehl*, where the Court considered the existence of a duty in the absence of a relationship between the parties. On appeal from the circuit court's dismissal on summary judgment, the Court reversed, concluding there were disputed facts regarding "whether Warne and Schoenfelder loaded the lumber on the trailer by hand without assistance or whether they were assisted by Horner employees with or without the forklift." 2004 S.D. 48, ¶ 4, 678 N.W.2d at 811. The Court did not, however, conclude that a duty existed, and this case does not support Two Eagle's argument.

[¶21.] A similar argument was rejected by the Iowa Supreme Court in *Kolbe v. State*, 661 N.W.2d 142 (Iowa 2003). In that case, the plaintiff was struck by a car driven by Justin Allen Schulte, who is partially blind. *Id.* at 143. Kolbe and his wife sued Schulte's physicians, who had given their opinions to the Iowa Department of Transportation that Schulte was competent to drive. *Id.* The Iowa Supreme Court affirmed the trial court's determination that Schulte's physicians owed no duty to Kolbe. *Id.* at 146. In so concluding, the court first noted the "general rule" that a "person has no duty to prevent a third person from causing harm to another." *Id.* (citation omitted).

[¶22.] Next, the *Kolbe* court considered whether there was a duty based on the "foreseeability of the harm to the injured person." *Id.* at 147. Like Two Eagle, the Kolbes argued that "the physicians should have recognized the need to protect the public[,]" and they "assumed the duty to protect it from Schulte." *Id.* Specifically, the Kolbes asserted "the physicians should have foreseen that their recommendation" regarding "Schulte's competence to drive would have resulted in Schulte obtaining an operator's permit" and injuring Kolbe. *Id.* The *Kolbe* court held that "[w]hen the physicians recommended Schulte as competent to drive, it was not foreseeable such opinion would cause injury to Charles." *Id.*

[¶23.] Here, as in *Kolbe,* Dr. Smith's involvement in Sully's care was too attenuated for it to be foreseeable that his treatment of Sully would result in injury to Two Eagle. More specifically, a reasonable person in Dr. Smith's position, when advising Sully that he could resume driving, would not have reasonably foreseen that Two Eagle would suffer an injury. *See Johnson*, 2015 S.D. 63, ¶ 15, 867

N.W.2d at 702. As the Pennsylvania Supreme Court explained: "We will not stretch foreseeability beyond the point of recognition for to do so will be to make liability endless. To allow liability in this case would be to make physicians absolutely liable for the various acts of their patients. This we will not countenance." *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 630 (Pa. 1999) (holding physician had no duty to decedent killed by patient with poor vision). Dr. Smith did not owe a duty to protect every member of the public, but only those who are foreseeable plaintiffs with a foreseeable injury. *Tipton v. Town of Tabor*, 1997 S.D. 96, ¶ 18, 567 N.W.2d 351, 359 ("As foreseeability is a necessary element in the duty formulation, actual knowledge denotes a foreseeable plaintiff with a foreseeable injury."). This view of the scope of duty created by foreseeability is consistent with long-standing public policy considerations.

[¶24.]     This Court has recognized that public policy is also a "major consideration in identifying a legal duty." *Wells Fargo Bank, N.A. v. Fonder*, 2015 S.D. 66, ¶ 18, 868 N.W.2d 409, 416 (citations omitted). "The primary sources for declarations of public policy in South Dakota are the constitution, statutes, and judicial decisions." *Oesterreich v. Canton-Inwood Hosp.*, 511 N.W.2d 824, 827 (S.D. 1994) (citation omitted). *See also Breck v. Janklow*, 2001 S.D. 28, ¶ 30, 623 N.W.2d 449, 459 ("[T]he sovereign power of this state, otherwise known as its public policy, is expressed in part by 'statutes enacted by the Legislature[.]'") (citation omitted).

[¶25.]     In *Kolbe*, the Iowa Supreme Court specifically discussed the relationship between a physician's duty and public policy as follows:

> It is not the physician's duty to protect all third parties who might come into contact with the physician's patient. Imposing

a duty upon physicians under the circumstances before us would impinge upon the physician's primary obligation, which is to treat his or her patient. To discount the importance of foreseeability in cases such as the one before us is to extend liability limitlessly to treating physicians vis-à-vis third party victims.

661 N.W.2d at 149 (internal citations omitted). In so concluding, the court relied in part on its previous holding in *Schmidt v. Mahoney*, 659 N.W.2d 552 (Iowa 2003). *Id.* at 150.

[¶26.]    In *Schmidt*, the plaintiff was injured in an automobile accident caused by Kathleen Oxley, who, like Sully, experienced a seizure while driving. *See* 659 N.W.2d at 553. Oxley's physician for her seizure disorder was Dr. Mahoney, who Schmidt alleged could be held liable for her injuries based on his alleged "negligent performance of an undertaking so as to establish liability under Restatement (Second) of Torts section 324A (1965)[.]" *Id.* The court concluded Dr. Mahoney could not be held liable under that or any of the other of Schmidt's theories, based on public policy reasons:

> Dr. Mahoney urges, and we agree, it is highly likely that a consequence of recognizing liability to members of the general public on the facts of this case will be that physicians treating patients with seizure disorders will become reluctant to allow them to drive or engage in any other activity in which a seizure could possibly harm a third party. In order to curtail liability, physicians may become prone to make overly restrictive recommendations concerning the activities of their patients and will exercise their role as reporters to the department of transportation in an inflexible manner not in their patient's best interest. We are unable to distinguish, on public-policy grounds, the potential for disrupting the physician-patient relationship that would arise from recognizing liability in the present case from the potential for damaging that relationship . . . .

*Id.* at 555.

[¶27.] In addition to the public policy concerns identified in *Schmidt*, we note that recognizing a physician's duty to third parties may divert physicians' focus from their patients' health. The public policy concern is that a physician's relationship with the patient may be adversely impacted if the physician feels compelled to provide medical advice necessary to avoid third-party liability rather than advice oriented to the patient's medical needs.

[¶28.] Physicians can provide advice to their clients but cannot compel compliance. As the Texas Supreme Court explained:

> Unfortunately, many patients do not heed the admonitions of their physicians even though the consequences may be life-threatening to the patient or others. Balancing both the need for and the effectiveness of a warning to a patient who already knows that he or she suffers from seizures against the burden of liability to third parties, we conclude that the benefit of warning an epileptic not to drive is incremental but that the consequences of imposing a duty are great. The responsibility for safe operation of a vehicle should remain primarily with the driver who is capable of ascertaining whether it is lawful to continue to drive once a disorder such as epilepsy has been diagnosed and seizures have occurred. Accordingly, we decline to impose on physicians a duty to third parties to warn an epileptic patient not to drive.

*Praesel v. Johnson*, 967 S.W.2d 391, 398 (Tex. 1998). *See also Medina v. Hochberg*, 987 N.E.2d 1206, 1213 (Mass. 2013); *Lester ex rel. Mavrogenis v. Hall*, 970 P.2d 590, 593 (N.M. 1998). These public policy considerations also counsel strongly against expanding physician duty to third parties.

## Conclusion

[¶29.] On the facts before us—the lack of any relationship between Dr. Smith and Two Eagle, the lack of foreseeability that Dr. Smith's alleged negligence would result in injuries to Two Eagle, and the public policy considerations—we conclude

that Dr. Smith owed no duty to Two Eagle. The circuit court did not err in dismissing Two Eagle's claims. We affirm.

[¶30.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, concur.

[¶31.] SALTER, Justice, concurs specially.

SALTER, Justice (concurring specially).

[¶32.] I join the Court's opinion, but I write specially to highlight our formulation of common law negligence principles which feature foreseeability as a component of both duty and causation. Although it does not impact our analysis, the Court faithfully cites as a foundational principle the familiar statement from our cases that holds, "Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation." *See supra* ¶ 19 (citing *Johnson v. Hayman & Assocs., Inc.*, 2015 S.D. 63, ¶ 13, 867 N.W.2d 698, 702 (citations omitted)). I confess difficulty in applying this rule, and, as I reflect upon our cases, perhaps I am not alone.

[¶33.] We have attempted to explain the fine point that apparently exists between foreseeability in the context of a duty and the exact same term in the very different context of causation:

> Some confusion exists in the law of torts because foreseeability of harm is considered an element of both duty and proximate cause under South Dakota law. However, foreseeability for purposes of establishing a duty is not invariably the same as the foreseeability relevant to causation. The latter essentially is to be viewed as of the time when the damage was done while the former relates to the time when the act or omission occurred. Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man.

*Peterson v. Spink Elec. Coop., Inc.*, 1998 S.D. 60, ¶ 15, 578 N.W.2d 589, 592 (cleaned up).

[¶34.]     This explanation does not seem particularly satisfying.  Simply shifting the point at which foreseeability is judged does not explain a substantive difference between the two types of foreseeability or justify what seems like a perceptible risk of confusion.  Logically, if a court were to find that a defendant is subject to liability and impose a duty on the basis of foreseeability, how then does foreseeability based upon the facts as they unfolded differ?  It seems likely and entirely relatable that parties might experience uncertainty, as we have noted.  *See Zerfas v. AMCO Ins. Co.*, 2015 S.D. 99, ¶ 13, 873 N.W.2d 65, 70 ("[The plaintiff's] argument confuses the concepts of foreseeability of harm as it relates to the element of causation and foreseeability of harm relevant to the element of duty.").  *But see Busta v. Columbus Hosp. Corp.*, 916 P.2d 122, 133 (1996) (discussing *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (1928), and noting that neither Justice Cardozo's majority opinion nor Justice Andrews' dissent "suggested that foreseeability should be considered on a redundant basis as part of both duty and proximate cause").

[¶35.]     In any event, the debate on this topic has existed for decades, and I acknowledge that we have long ago cast our lot with the authorities that hold foreseeability has two different meanings within the elements of common law negligence.  And nothing about this case marks it as an appropriate occasion to engage further in this discussion.  That opportunity will have to wait for another day and a case in which the question concerning the role(s) of foreseeability is properly presented.